# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GLORIA DELEON,<br><br>　　　　　　　　　Plaintiff,<br>vs.<br><br>MICHAEL ASTRUE, Commissioner of Social Security,<br><br>　　　　　　　　　Defendant. | CASE NO.  09cv2282-WQH (WMc)<br><br>REPORT AND RECOMMENDATION DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S CROSS MOTION FOR SUMMARY JUDGMENT |

**INTRODUCTION**

Plaintiff Gloria Deleon (hereinafter Plaintiff) brings this action pursuant to section 405(g) of the Social Security Act, 42 U.S.C. § 1383 (c)(3)[1] to obtain judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her claim for Social Security Disability Insurance Benefits ("SSDI") under Title II and Title XVI of the Social Security Act ("Act"), 42 U.S.C §§ 1381, et seq.  Plaintiff has filed a motion for summary judgment.  In that motion, Plaintiff argues she should have been found "disabled" under the Act and the Appeals Council's decision adopting the Administrative Law Judge's ("ALJ") decision of September 18, 2009 denying her benefits should be reversed because the ALJ's decision is not supported by

---

[1] 42 U.S.C. § 1383(c)(3) provides:
　The final determination of the Commissioner of Social Security after a hearing [to determine eligibility or amount of benefits] shall be subject to judicial review as provided in section 405(g) of this title...

substantial evidence and is based on legal error. The Commissioner filed a cross-motion for summary judgment. In the motion, the Commissioner argues the ALJ's decision is supported by substantial evidence and is not based on legal error.

**PROCEDURAL HISTORY**

Alleging a disability onset date of February 4, 2000, Plaintiff filed for disability insurance benefits on April 7, 2005. On August 1, 2005, Plaintiff's application was denied and again denied on reconsideration February 23, 2006.

A hearing was held January 4, 2007 upon Plaintiff's timely filed request. Testifying were Plaintiff and Mark Remas the vocational expert (VE). (A.R. at 436-452.) On February 7, 2007, the ALJ denied Plaintiff's claim for benefits (A.R. at 67-74.) The Appeals Council granted Plaintiff's request for review of the hearing decision and remanded the case. (A.R. at   )

On September 22, 2008, the ALJ held a hearing. Dr. Michael Goldhamer, M.D., a medical expert and VE Nelly Katsell testified. Neither Plaintiff nor her attorney were present at that hearing. On January 20, 2009, a further hearing was held. Plaintiff and Dr. Goldhamer were present and testified. Plaintiff's attorney had the opportunity to cross-examine Dr. Goldhamer. (A.R. at 476.) On March 3, 2009, the ALJ denied Plaintiff's claim for benefits, finding Plaintiff not disabled during the allege period of disability. The Appeals Counsel denied review. (A.R. at 4-6.)

**FACTUAL BACKGROUND**

Plaintiff was born May 9, 1956; at the time of her last insured date Plaintiff was forty-nine years old. (A.R. at 28.) Plaintiff testified at the hearing she completed six years of education in Mexico. Plaintiff is able to communicate in English (A.R. at 28.) Because Plaintiff was found not disabled, it was not determined whether Plaintiff has transferable job skills. (Id.)

At the January 2007 hearing Plaintiff testified she cannot work due to problems associated with Crohn's disease, multiple transient ischemic attacks (TIA). (P's MSJ at 5.)

**LEGAL STANDARD**

The supplemental security income program established by Title XVI of the Act provides benefits to disabled persons without substantial resources and little income. 42 U.S.C. § 1383. To

qualify, a claimant must establish an inability to engage in "substantial gainful activity" because of a "medically determinable physical or mental impairment" that "has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A). The disabling impairment must be so severe that, considering age, education, and work experience, the claimant cannot engage in any kind of substantial gainful work that exists in the national economy. 42 U.S.C. § 1382(a)(3)(B).

The Commissioner makes this assessment by a five-step analysis. First, the claimant must currently not be working. 20 C.F.R. § 416.920(b). Second, the claimant must have a "severe" impairment. 20 C.F.R. § 416.920(c). Third, the medical evidence of the claimant's impairment is compared to a list of impairments presumed severe enough to preclude work. 20 C.F.R. § 416.920(d). If the claimant's impairment meets or equals one of the listed impairments, benefits are awarded. 20 C.F.R. § 416.920(d). Fourth, if the claimant can do his past work, benefits are denied. 20 C.F.R. § 416.920(e). Fifth, if the claimant cannot do his past work and, considering the claimant's age, education, work experience, and residual functional capacity, cannot do other work that exists in the national economy, benefits are awarded. 20 C.F.R. § 416.920(f). The last two steps of the analysis are required by statute. 42 U.S.C. § 1382(a)(3)(B).

In addition, when evaluating the severity of a claimant's alleged mental impairments, the Commissioner uses a "special technique" at each level of the review process. 20 C.F.R. § 416.1520a. In order to be considered disabled under the Act, the claimant must have: (1) a medically determinable mental impairment(s), 20 C.F.R. § 416.1520a(b)(1)[2], and (2) exhibit specified functional limitations as a result of that impairment(s) which prohibit the claimant from engaging in any gainful activity. 20 C.F.R. § 416.1520a(b)(2). If the claimant has a medically determinable mental impairment but does not exhibit the requisite functional limitations, the claimant may nevertheless still be considered disabled if the claimant exhibits clusters of symptoms or a syndrome indicating an inability to engage in gainful activity. 20 C.F.R. §

---

[2] There are nine diagnostic categories that the Act considers to be medically determinable mental impairment(s): Organic mental disorders (12.02); schizophrenic, paranoid, and other psychotic disorders (12.03); affective disorders (12.04); mental retardation (12.05); anxiety related disorders (12.06); somatoform disorders (12.07); personality disorders (12.08); substance addiction disorders (12.09); and autistic disorder and other pervasive developmental disorders (12.10). 20 C.F.R.Pt. 404, Subpt. P, App. 1 § 12.00.A.

404.1520a(d); 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00.A. (impairment(s) must either pose functional limitations or cause symptoms or a syndrome to support a finding of disabled).

Sections 405(g) through 1383(c)(3) of the Act, allow unsuccessful applicants to seek judicial review of a final agency decision of the Commissioner. 42 U.S.C. §§ 1383(c)(3), 405(g). The scope of judicial review is limited, however, and the Commissioner's denial of benefits "will be disturbed only if it is not supported by substantial evidence or is based on legal error." *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433(9th Cir. 1988) (*quoting Green v. Heckler*, 803 F.2d 528, 529 (9th Cir. 1986)).

Substantial evidence means "more than a mere scintilla" but less than a preponderance. *Sandqathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997). "[I]t is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (*quoting Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). The court must consider the record as a whole, weighing both the evidence that supports and detracts from the Commissioner's conclusions. *Desrosiers v. Secretary of Health & Human Services*, 846 F.2d 573, 576, (9th Cir. 1988). If the evidence supports more than one rational interpretation, the court must uphold the ALJ's decision. *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). When the evidence is inconclusive, "questions of credibility and resolution of conflicts in the testimony are functions solely of the Secretary." *Sample v. Schweiker,* 694 F.2d 639, 642 (9th Cir. 1982).

The ALJ has a special duty in social security cases to fully and fairly develop the record in order to make an informed decision on a claimant's entitlement to disability benefits. *DeLorme v. Sullivan*, 924 F.2d 841, 849 (9th Cir. 1991). Because disability hearings are not adversarial in nature, the ALJ must "inform himself about the facts relevant to his decision," even if the claimant is represented by counsel. *Id.* (*quoting Heckler v. Campbell*, 461 U.S. 458, 471 n.1 (1983)).

Even if the reviewing court finds substantial evidence supports the ALJ's conclusions, the court must set aside the decision if the ALJ failed to apply the proper legal standard(s) in weighing the evidence and reaching a decision. *Benitez v. Califano*, 573 F.2d 653, 655 (9th Cir. 1978). Section 405(g) permits a court to enter a judgment affirming, modifying or reversing the Commissioner's decision. 42 U.S.C. § 405(g). The reviewing court may also remand the matter to

the Social Security Administrator for further proceedings. *Id.*

**DISCUSSION**

**Medical Evidence Presented**

In order to understand Plaintiff's alleged medical problems a review of her relevant medical history is presented here.

-May 2005: Dr. Christopher Abbott, M.D. conducted an internal medicine consultive evaluation. He noted normal range of motion, no evidence of tenderness in the wrists, good motor tone, normal gait. (A.R. at 364-366.)

-October 2006: Dr. Noli Cava, M.D. conducted an internal medicine consultive evaluation. Dr. Cava noted Plaintiff's previously reversed colostomy, her conservative treatment of symptoms with aspirin. Dr. Cava also noted Plaintiff had no difficulty getting up from a chair, had normal range of motion and appeared in no apparent distress. (A.R. at 403-405.)

-July 2005: Dr. C. Valette, Ph.D. examined and evaluated Plaintiff's mental health. Dr. Valette noted Plaintiff had no history of psychiatric hospitalization, Plaintiff's thought processes were normal, and her mood was appropriate. (A.R. at 382.) Dr. Valette opined "In light of the patient's poor effort, along with her adequate presentation, reported functional abilities, and adequate historical abilities, this evaluator believes that there are no mental restrictions regarding this patient." (A.R. at 383.)

-May 2007: Dr. Gregory Wiener, M.D. examined and evaluated Plaintiff. He noted Plaintiff appeared in no acute distress. (A.R. at 415.) He also noted she had left side weakness and some form of inflammatory bowel disease "probably classified as Chron's." (Id.) Dr. Wiener also opined Plaintiff suffered from diffuse arthritis. Ultimately Dr. Wiener stated "I would appreciate any efforts that are done to immediately place this patient on disability for at least the next 1-2 years. . ." (A.R. at 416.)

**Vocational Evidence Presented**

Vocational expert ("VE"), Mark Remas, testified at the January 2007 hearing. Based upon the vocational profile, residual functional capacity assessment and hypotheticals provided by the ALJ at that time, VE Remas testified Plaintiff could perform light work. (AR at 452.) Specifically,

1  VE Remas testified Plaintiff could perform jobs classified as jewelry stringer, and Mexican food
2  maker. (A.R. at 454.)

3  VE Nelly Katsell testified at the September 2008 hearing. Based upon the vocational
4  profile and hypotheticals provided by the ALJ at that time, VE Katsell testified no former work
5  was available to Plaintiff. (A.R. at 471.) VE Katsell testified Plaintiff could perform unskilled
6  light work. (A.R. at 472.) Specifically, VE Katsell testified Plaintiff could perform jobs classified
7  as garment folder, and job assembler. (A.R. at 472.)

**ALJ's Medical Evaluation**

After a lengthy discussion of the medical evidence presented and a presentation of
Plaintiff's testimony, the ALJ determined Plaintiff was not entitled to disability insurance benefits
under the Act (A.R. at 24-28.) based upon the following findings:

1. From December 31, 2005 through the date of his decision, Plaintiff did not engage in substantial gainful activity. (A.R. at 22.)

2. Plaintiff's chronic bowel disease, back pain, polyatrhralgias, migraine headaches, and arthritis of the hands, are considered "severe" based on the requirements in the Regulations [citation omitted]. (Id.)

3. These medically determinable impairments do not meet or medically equal one of the listed impairments in the Social Security Regulations. (A.R. at 24.)

4. The ALJ found Plaintiff retains "the physical residual functional capacity to lift/and or carry twenty pounds occasionally and ten pounds frequently, as well as sit, stand and/or walk six hours in an eight-hour workday, with pushing, pulling limitations to accommodate this but is precluded from concentrated exposure to vibration and work hazards such (sic) unprotected heights and moving machinery. It is further found the claimant is limited to occasional climbing (20 CFR 404.1567(b)). This finding is supported by the medical expert testimony." (A.R. at 24.)

5. The ALJ finds the Plaintiff's allegations regarding her limitations are not totally credible for the reasons set forth in the body of the decision.

6. Through the date of last insured, December 31, 2005, Plaintiff was unable to perform past relevant work. (A.R. at 28.)

7. "Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is 'not disabled,' whether or not the claimant has transferable job skills. (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2)." (A.R. at 28.)

8. Plaintiff "was not under a disability, as defined in the Social Security Act, at any time from February 4, 2000, the alleged onset date, through December 31, 2005, the date last insured (20 CFR 404.1520(g))." (A.R. at 29.)

**Plaintiff's Claim on Appeal**

Plaintiff asserts six claims: 1) The ALJ erred in his analysis of the severity of Plaintiff's impairments; 2) The ALJ improperly discredited Plaintiff's allegations of disabling pain; 3) Plaintiff's Residual Functional Capacity was not supported by substantial evidence in the record; 4) The ALJ failed to properly credit Third Party statements; 5) The ALJ erred in not reconciling the Vocational Experts testimony with the Dictionary of Occupational Titles; 6) The ALJ improperly rejected the opinion of Plaintiff's treating physician;

**1) The ALJ erred in his analysis of the severity of Plaintiff's impairments**

Plaintiff contends the ALJ failed to consider the impact of her history of transient ischemic attacks ("TIA") with her other multiple impairments on her ability to work. Specifically, Plaintiff contends "[t]he ALJ failed to evaluate the combined effect of Plaintiff's multiple TIA attacks as severe impairments or their effect on her RFC." (P's MSJ at 4).

Defendant contends, "the ALJ properly relied on the medical expert's opinion and on Plaintiff's medical records to find that Plaintiff's severe impairments included migraine headaches, but not transient ischemic attacks (TIAs)." (D's Cross-MSJ at 3).

The Ninth Circuit has held "[t]he ALJ in a social security case has an independent 'duty to fully and fairly develop the record and to assure that the claimant's interests are considered.'" *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001).

In this case, several factors weigh against finding the ALJ erred. First, the ALJ cited to evidence that Plaintiff's MRI of her brain and neck were completely within normal limits. (A.R. at 26, 344, 402.) Second, the ALJ found Plaintiff has been "neurologically intact." In fact, Dr.

1  Goldhamer testified Plaintiff;s alleged TIAs were likely migraine related. (A.R. at 26, 468.)
2  Finally, and most importantly, at the two hearings held by the ALJ regarding Plaintiff's case
3  (January 2007 and September 2008) Plaintiff's counsel spent significant time questioning the
4  medical expert about Plaintiff's Inflammatory Bowel Disease but few or no questions were
5  presented regarding Plaintiff's alleged TIAs. (A.R. 476-483.)  Likewise, Plaintiff's counsel
6  declined the opportunity to cross examine or present her own hypotheticals to the Vocational
7  Expert. (A.R. at 454.)  In sum, Plaintiff simply fails to direct the Court's attention to any evidence
8  in the record to support a finding Plaintiff was disabled on account of her alleged TIAs in
9  combination with any other impairment.

10  Furthermore, the Court finds the ALJ 's failure to specifically include Plaintiff's past TIAs
11  in combination with Plaintiff's other impairments is harmless error.  The Ninth Circuit has held,
12  "we recognize harmless error applies in the Social Security context."  *Stout v. Commissioner Soc.*
13  *Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006). A finding of harmless error has been upheld
14  "where the mistake was nonprejudicial to the claimant or irrelevant to the ALJ's ultimate disability
15  conclusion." *Id*.  Here, the ALJ's hypothetical included any/all potential restrictions identified and
16  supported by the medical evidence in the record.  *See Stubbs-Danielson v. Astrue*, 539 F.3d 1169,
17  1174 (9th Cir. 2008).  The ALJ found insufficient evidence in the record to support Plaintiff's
18  contention her TIAs ultimately impacted her residual functional capacity. *Id.*

19  Plaintiff also briefly argues the ALJ failed to evaluate the evidence related to Plaintiff's
20  perirectal abscesses and fistulas and the effect these impairments would have on Plaintiff's RFC.
21  (P's MSJ at 6).  Defendant asserts "the ALJ gave proper consideration to Plaintiff's symptoms and
22  found that her history of chronic bowel disease was a severe impairment." (D's Cross MSJ at 4).

23  After reviewing all evidence in the record, the ALJ found Plaintiff did suffer from chronic
24  bowel disease of unknown etiology.  However,  the ALJ did not find a diagnosis of Crohn's
25  disease to be supported by that evidence. (A.R. at 22-23, 468-469.)  That the ALJ incorporated Dr.
26  Goldhamer's opinion into his own formulation of Plaintiff's RFC shows Plaintiff was not
27  prejudiced by the ALJ's lack of specificity regarding Plaintiff's chronic bowel disease. Moreover,
28  the ALJ's ultimate determination Plaintiff had the residual functional capacity to perform only

light work with limitations demonstrates any specific reference to chronic bowel syndrome was irrelevant to the ALJ's disability conclusion. For example, light work is defined, in part, as requiring occasional exertion up to 20 pounds of force, frequent exertion up to 10 pounds of force, constantly moving objects and sit/stand/walk up to six hours in an eight hour day. See DICOT 520.687-046. This aspect of Plaintiff's RFC fits well within Plaintiff's limitations as evidenced by the information presented in the record, including the testimony of Dr. Goldhamer.

For these reasons, it is recommended Plaintiff's motion for summary judgment on this claim be **DENIED**.

**2) The ALJ improperly discredited Plaintiff's allegations of disabling pain**

Plaintiff contends the ALJ improperly discredited her testimony about symptoms and pain. (P's MSJ at 7). According to Plaintiff, the pain and physical limitations she experiences as a result of her physical and mental impairments were sufficiently proven by the evidence presented to be severe.

Defendant contends "[h]ere the ALJ gave specific, clear, and convincing reasons for finding Plaintiff's subjective complaints not credible." (D's Cross Motion at 5).

In the instant case, the ALJ found Plaintiff's allegations of disabling limitations "not entirely credible." (A.R. at 25). When evaluating a plaintiff's claim of subjective symptom testimony, the ALJ must engage in a two step analysis: (1) the Cotton test[3] and (2) analysis of the plaintiff's credibility. *Smolen v. Chater*, 705 F.3d 1273, 1281-82 (9th Cir. 1996). The *Cotton* test requires the ALJ to determine whether the plaintiff has produced objective medical evidence on an underlying impairment and whether the symptoms alleged could reasonably be produced by the impairment. *Bunnell v. Sullivan*, 947 F.2d 341 (9th Cir. 1991). If the plaintiff meets that the *Cotton* test, and there is no evidence of malingering, the ALJ must offer specific, clear and convincing reasons to reject the plaintiff's symptom testimony. *See Dodrill v. Shalala*, 12 F3d 915,918 (9th Cir. 1993). To properly reject Plaintiff's testimony, the ALJ must specify which testimony is not credible and "what evidence suggests the complaints are not credible." *Id.* The ALJ "must evaluate the intensity, persistence, and limiting effects of the individual's ability to do

---

[3] *Cotton v. Bowen*, 799 F.2d 1402 (9th Cir. 1986).

basic work activities." Social Security Ruling, No. 96-7p, (SSA July 2, 1996). When the individual statements are not substantiated by objective medical evidence, "the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record.," including, but not limited to, "the medical reports and laboratory findings, the individual's own statements about the symptoms and how they affect the individual," as well as any other "relevant evidence in the case file." *Id.* "When additional information is needed to assess the credibility of the individual's statements about symptoms and their effects, the adjudicator must make every reasonable effort to obtain available information that could shed light on the credibility of the individual's statements. *Id.* In addition to medical evidence, the adjudicator "must consider" the kinds of evidence identified in 20 C.F.R. 404.1529(c) and 426.929(c), including factors such as the claimant's daily activities, factors that precipitate or aggravate the symptoms, medications taken to relieve pain, treatment other than medication, and "[a]ny other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms." *Id.* Consistency is "[o]ne strong indication of the credibility of an individual's statements. . . ." *Id.*

In this case the ALJ found Plaintiff had the severe impairments of 1) history of chronic bowel disease of unknown etiology; 2) back pain of unknown etiology; 3) polyarthalgias in multiple area (sic) of the body; 4) migraine headaches; and 5) arthritis of the hands. [A.R. at 22.]

The ALJ considered the evidence of Plaintiff's medical history and physical limitations, but found the evidence insufficient to adequately support Plaintiff's allegations of disabling pain to the degree alleged. [A.R. at 25.] The ALJ provided several specific reasons for rejecting Plaintiff's testimony as not credible. First, the ALJ noted Dr. Vallette's evaluation suggested Plaintiff was exaggerating her symptoms. [A.R. at 25]. Second, the ALJ points out Plaintiff has full range of motion in her back, shoulders, and knees. She has also been consistently neurologically intact. [A.R. at 26]. Third, the medical evidence presented fails to support Plaintiff's complaint of residual left-sided weakness and numbness after her strokes in April 2005. [Id.] Fourth, the medical evidence presented does not show Plaintiff suffers from motor loss in the bilateral lower extremities. [Id.] Fifth, Plaintiff's brain scan in April 2005 was normal and a CT scan was

negative. [A.R. 345-347]. Sixth, the ALJ noted Plaintiff's course of treatment has reflected a conservative approach [Id.] Seventh, the ALJ points out the record does not reflect Plaintiff requires special accommodation to manage her pain or other symptoms. [Id.] Eighth, Plaintiff's claims of disabling fatigue, weakness, loss of strength and difficulty moving are contradicted by the evidence in the record. [A.R. 477-481; 483-484] Ninth, Plaintiff has not been prescribed and is not taking pain medication consistent with the level of pain Plaintiff alleges. [A.R. at 487].

The ALJ's interpretation of Plaintiff's symptoms was sound and supported by objective evidence in the record.  A review of the ALJ's decision shows he based his conclusion regarding Plaintiff's credibility upon Plaintiff's testimony, her medical history, and the reports submitted by various treating and non-treating physicians.  In the present case, in reaching his decision, the ALJ relied primarily on medical reports and on Dr. Goldhamer's testimony.

The ALJ's determination Plaintiff's allegations of severe pain are not credible is supported by clear and convincing reasons.  The ALJ presented several reasons for rejecting Plaintiff's claim of disabling pain and mental impairment.  All were clear and convincing reasons for determining that Plaintiff's alleged disabilities did not rise to the level of a disability or combination thereof justifying disability benefits.  The ALJ's reasons were clearly based on the medical evidence submitted as well as Plaintiff's testimony. "Questions of credibility and resolution of conflicts in the testimony are functions solely of the Secretary." *Allen v. Heckler*, 749 F.2d 577, 580 n.1 (9th Cir. 1985).  *See also Reddick v. Chater*, 157 F.3d 715, 722 ("[G[eneral findings are insufficient; rather the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints.") As such, Plaintiff's claim of disabling impairment is rejected and contradicts Plaintiff's argument that the ALJ improperly discredited Plaintiff's pain testimony.

For the reasons stated herein, it is recommended Plaintiff's motion for summary judgment on this issue be **DENIED**.

**3) Plaintiff's Residual Functional Capacity was not supported by substantial evidence in the record**

Plaintiff claims "[t]he failure to apply the appropriate legal standards or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed

constitutes grounds for reversal." [P's MSJ at 10 citing *Andrade v. Secretary of Health and Human Services*, 985 F.2d 1045 (10th Cir. 1993).

In response, Defendant contends "[t]he ALJ's RFC assessment should be affirmed because it was consistent with both the opinion of the testifying expert and the medical record as a whole." (D's Cross MSJ at 9).

Residual functional capacity is the *most* a claimant can do despite her limitations. 20 C.F.R. § 404.1545. The RFC assessment must be based on all the relevant evidence in the record. *Id*. An ALJ's determination of a claimant's RFC will be affirmed if the ALJ applied the proper legal standard and his decision is supported by substantial evidence. *Bayliss v. Barnhart*, 427 F.3d 1211, 1271 (9th Cir. 2005) (internal citations omitted).

From December 31, 2005, the date claimant was last insured, the ALJ found Plaintiff's residual functional capacity ("RFC") was as follows:

> **[R]etains the physical residual functional capacity to lift and/or carry twenty pounds occasionally and ten pounds frequently, as well as sit, stand and/or walk six hours in and eight hour workday, with pushing and pulling limitations to accommodate this but is precluded from concentrated exposure to vibration and work hazards such (sic) unprotected heights and moving machinery. It is further found the claimant is limited to occasional climbing. (A.R. at 24).**

In reaching that determination the ALJ stated "[i]n making this finding, the undersigned has considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and SSRs 96-4p and 96-7p." (A.R. at 25.) Additionally, the ALJ also stated he considered opinion evidence in making his RFC determination. (A.R. at 28.)

Specifically, the ALJ considered the testimony of Dr. Goldhamer regarding Plaintiff's physical impairments. Dr. Goldhamer testified Plaintiff had irritated bowel disorder but not Crohn's disease. (A.R. at 23.) Dr. Goldhamer also testified Plaintiff's medical records supported his opinion Plaintiff suffered from migraine headaches but not strokes or TIAs. (A.R. at 436.)

The ALJ also considered the testimony of vocational expert ("VE"), Mr. Remas, regarding Plaintiff's RFC. The VE was presented with a hypothetical incorporating Plaintiff's alleged mental and physical impairments. He testified, given her current limitations, Plaintiff would be

precluded from all past work. (A.R. at 454.)

Plaintiff contends the ALJ failed to evaluate the evidence that Plaintiff's medical records demonstrate she received treatment for repeated perirectal abscesses and fistulas that would drain pus. In support of this argument Plaintiff cites to Dr. Wiener's evaluation (A.R at 415-419.) However, the ALJ rejected Dr. Wiener's evaluation "as an aberrant examining source, not consistent with other well-documented and supported opinions." (A.R. at 22.) It is well settled "the ALJ's role is to resolve evidentiary conflicts. If there is more than one rational interpretation of the evidence, the ALJ's conclusion must be upheld." *Allen v. Sec'y of Health & Human Servs.*, 726 F.2d 1470, 1473 (9th Cir. 1984).

Here, Plaintiff has presented no persuasive evidence from the record supporting her claim the ALJ failed to properly assess Plaintiff's functional limitations. The Court finds the ALJ's assessment of Plaintiff's functional limitations is supported by the substantial evidence not based on legal error. Therefore, the Court recommends Plaintiff's motion for summary judgment on this issue be **DENIED**.

**4) The ALJ failed to properly credit Third Party statements**

Plaintiff argues that the ALJ erred in granting little to no weight to the statements of Manuel DeLeon ( Plaintiff's son), Norma Dominguez (Plaintiff's daughter), and Aude Moreno (Plaintiff's friend). Plaintiff states the ALJ may consider evidence from non-medical sources, such as relatives, to show the severity of the claimant's impairment and how it affects his ability to work. See 20 CFR § 404.1513(d). "If the ALJ wishes to discount the testimony of the lay witnesses, he must give reasons that are germane to each witness." *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993).

Defendant asserts "[t]he ALJ . . .evaluated and relied on the opinions of the consultative examining physicians, as well as the medical expert's testimony which he conflicted with the witness claims." (D's Cross MSJ at 10).

In the present case, the ALJ stated in his decision:

> **Mr. Manuel De Leon's report does not establish that the claimant is disabled. Since he is not medically trained to make exacting observations as to dates, frequencies, types and degrees of medical signs and symptoms, . . . the accuracy of his report is questionable. . . . Most importantly, significant weight**

> **cannot be given to Mr. De Leon's report because it, like the claimant's reports and testimony, are simply not consistent with the preponderance of the opinions and observations by medical doctors in this case.**
> **Ms. Norma Dominguez's reports do not establish that the claimant is disabled. Since she is not medically trained to make exacting observations as to dates, frequencies, types and degrees of medical signs and symptoms, . . . the accuracy of her report is questionable. . . . Most importantly, significant weight cannot be given to Ms. Dominguez's reports because they, like the claimant's reports and testimony, are simply not consistent with the preponderance of the opinions and observations by medical doctors in this case.**
> **M. Aude Moreno's report does not establish that the claimant is disabled. Since she is not medically trained to make exacting observations as to dates, frequencies, types and degrees of medical signs and symptoms, . . . the accuracy of her report is questionable. . . . Most importantly, significant weight cannot be given to Ms. Dominguez's reports because they, like the claimant's reports and testimony, are simply not consistent with the preponderance of the opinions and observations by medical doctors in this case. (A.R. at 27.)**

The Ninth Circuit has held "one reason for which an ALJ may discount lay testimony is that it conflicts with medical evidence." *Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984). The ALJ's decision in this case satisfies these standards. Contrary to Plaintiff's assertions, the ALJ did not reject lay testimony without comment or findings. "It is the ALJ's role to resolve evidentiary conflicts. If there is more than one rational interpretation of the evidence, the ALJ's conclusion must be upheld." *Allen v. Sec'y of Health & Human Servs.*, 726 F.2d 1470, 1473 (9th Cir. 1984). The record demonstrates the ALJ considered, but ultimately rejected, the lay witness testimony. Therefore, it is recommended that Plaintiff's motion for summary judgment on this ground be **DENIED**.

**5) The ALJ erred in not reconciling the Vocational Experts testimony with the Dictionary of Occupational Titles**

Plaintiff argues the ALJ failed to resolve conflicts in the testimony of the Vocational Expert ("VE"). Specifically, Plaintiff contends the physical demands of th jobs identified by the VE, and adopted by the ALJ, as other work Plaintiff can perform (e.g. bottling line attendant, jewelry stringer, and Mexican food maker) exceed Plaintiff's limitations. (P.'s MSJ at 15-16.)

In response, Defendant contends "[t]he VE testimony was based on a hypothetical question that included all of Plaintiff's limitations that the ALJ found supported by the record." (D's Cross MSJ at 11).

From December 31, 2005, the date claimant was last insured, the ALJ found Plaintiff's

residual functional capacity ("RFC") was as follows:

> **[R]etains the physical residual functional capacity to lift and/or carry twenty pounds occasionally and ten pounds frequently, as well as sit, stand and/or walk six hours in and eight hour workday, with pushing and pulling limitations to accommodate this but is precluded from concentrated exposure to vibration and work hazards such (sic) unprotected heights and moving machinery. It is further found the claimant is limited to occasional climbing.**

A review of the exertional requirements for the three occupations cited by VE Remas all fall within Plaintiff's exertional limitations. For example, none require exposure to vibrations or moving machinery. *See* DICOT 509.687-018, 520.687-046, 920.687-042. Further, pushing and pulling limitations are within the requirements of the RFC identified by the ALJ. Lastly, all are identified as light/unskilled work. Here, Plaintiff has failed to adequately demonstrate the existence of ambiguities in the record between Plaintiff's RFC and the occupations cited by the VE as suitable for Plaintiff. Therefore, it is recommended Plaintiff's claim for summary judgment on this ground be **DENIED**.

**6) The ALJ improperly rejected the opinion of Plaintiff's treating physician**

Plaintiff contends the "ALJ failed to properly reject the treating physicians's opinion of Plaintiff's limitations with specific and legitimate reasons based upon substantial evidence in the record." (P's MSJ at 17.) Specifically, Plaintiff argues the opinions of Dr.Wiener, the treating physcian, were not adequately rejected by the ALJ with specific legitimate reasons based upon the record as a whole. *See Gonzalez v. Sullivan*, 914 F.2d 1197, 1200 (9th Cir. 1990).

Defendant argues it was not error for the ALJ to discount Dr. Weiner. "[T]he ALJ duly considered Dr. Weiner's opinion and properly gave greater weight to the medical expert's testimony, which was more consistent with the contemporaneous evidence of record." (D's Cross MSJ at 13).

The Ninth Circuit distinguishes among the opinions of three types of physicians :(1) those who treat the claimant ("treating physicians"); (2) those who examine but do not treat the claimant ("examining physicians"); and (3) those who neither examine nor treat the claimant ("non-examining physicians"). *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). As a general rule, more weight is given to the opinion of a treating source than to that of a nontreating physician. *Id*. (citing *Winans v. Bowen*, 853 F.2d 643, 647 (9th Cir. 1987)). Likewise, the opinion of an

examining physician is typically entitled to greater weight than that of a nonexamining physician. *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990).

Recently, the Ninth Circuit held "[i]f a treating physician's opinion is not given 'controlling weight' because it is not 'well-supported' or because it is inconsistent with other substantial evidence in the record, the Administration considers specific factors in determining the weight it will be given. Those factors include the 'length of the treatment relationship and the frequency of examination' by the treating physician; and the 'nature and extent of the treatment relationship' between the patient and the treating physician. Generally, the opinions of examining physicians are afforded more weight than those of non-examining physicians, and the opinions of examining non-treating physicians are afforded less weight than those of treating physicians." *Id.* at 631.

Where a non-treating, non-examining physician's opinion contradicts the treating physician's opinion, the ALJ may only reject the treating physician's opinion "if the ALJ gives specific, legitimate reasons for doing so that are based upon substantial evidence in the record." *Jameson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997) (quoting *Andrew v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995)) "The may meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Morgan v. Apfel*, 169 F.3d 595, 600-601 (9th Cir. 1999) (citing *Magallanes*, *supra*, 881 F.2d at 751)). Additionally, "[reports of consultative physicians called in by the Secretary may serve as substantial evidence." *Andrews, supra*, 53 F.3d at 1041. Where medical reports are inconclusive, "questions of credibility and resolution of conflicts in the testimony are functions solely of the Secretary.'" *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982) (quoting *Waters v. Gardner*, 452 F.2d 855, 858 n.7 (9th Cir. 1971)).

In this case, the ALJ set forth his reasons why he did not fully credit Dr. Wiener's opinion:

> **The consultation by Dr. Gregory J. Wiener in May 3, 2007, relied heavily upon the claimant's history as provided by her, without reference to any diagnostic processes or imaging or laboratory findings, and is the only opinion to suggest total disability. When considered in totality, the absence or, at best, paucity of his findings mandate a rejection of this opinion as an aberrant examining source, not consistent with other well-documented and supported opinions.**

1    Additionally, the Court notes it is unclear whether Dr. Wiener is a treating physician as that
2    termed is used here.  A review of the record shows Dr. Wiener examined Plaintiff but the record
3    does not demonstrate he was Plaintiff's treating physician beyond the consultation he completed
4    on May 3, 2007.  (A.R. at 415.)

5    "The ALJ need not accept the opinion of any physician, including a treating physician, if
6    that opinion is brief conclusory, and inadequately supported by clinical findings." *Thomas v.
7    Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002).  Here, the ALJ gave little weight to Dr. Weiner's
8    opinion and provided specific and legitimate reasons which were based on substantial evidence.[4]

9    Here, the ALJ explained that Dr. Weiner's assessment was based on subjective complaints
10   and not clinical evidence.  *See Bayliss v. Barnhart*, 427 F.3d, 1211, 1217 (9th Cir. 2005) (the ALJ
11   properly rejected psychological assessement because opinion was based on subjective complaints,
12   not medical data or reports).  The ALJ explained Dr. Weiner's assessment was based almost
13   entirely on Plaintiff's self-reported history and symptomology, and the ALJ found Plaintiff not
14   fully credible. (A.R. at 25.)  The ALJ also specifically cited to inconsistencies between the opinion
15   of Dr. Weiner and other evidence presented in the record, including opinions by Diane Rose[5],
16   M.D., Michael Goldhamer, M.D. (A.R. 477-484), and Noli Cava, M.D. (A.R. at 402-406).   The
17   opinions by these other physicians who either examined or reviewed Plaintiff's medical condition
18   reached conclusions similar to the ALJ's residual functional determination.   As presented herein,
19   the ALJ relied on the opinions of all the physician except for Dr. Weiner to support his conclusion
20   Plaintiff was not disabled.  Accordingly, the Court finds the ALJ's finding is supported by
21   substantial evidence and free of legal error and recommends Plaintiff's motion be **DENIED** on this
22   ground.

**CONCLUSION**

Accordingly, it is recommended that Plaintiff's Motion for Summary Judgment be

---

[4] The Court notes the opinion of Dr. Weiner was not uncontroverted. Therefore, the clear and convincing standard did not apply.  Instead, the ALJ need only cite to specific and legitimate reasons for rejecting the opinion.  *Lester*, 81 F.3 at 830-31.

[5] In his decision the ALJ specifically noted he concurred in Dr. Rose's RFC finding but did not agree with Dr.Rose's notation of Crohn's disease as self-reported by Plaintiff.) (A.R. at 370-377.)

1  **DENIED** and that Defendant's Cross-Motion for Summary Judgment be **GRANTED.**

2      This Report and Recommendation of the undersigned Magistrate Judge is submitted to the United States District Judge assigned to the this case, pursuant to the provisions of 28 U.S.C. § 636(b)(1).

    **IT IS HEREBY ORDERED** that any written objections to this Report must be filed with the Court and served on all parties no later than **August 16, 2010**.  The document should be captioned "Objections to Report and Recommendation."

    **IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and served on all parties no later than **August 23, 2010**.  The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order.  *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

    **IT IS SO ORDERED.**

DATED: July 30, 2010

_____
Hon. William McCurine, Jr.
U.S. Magistrate Judge
United States District Court